IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PEDRO L.,[1]                                    6:19-cv-01340-BR

        Plaintiff,                          OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

**BRENT WELLS**
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401
541-686-1969

        Attorneys for Plaintiff

**SCOTT ASPHAUG**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

    [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**WILLY LE**
Acting Regional Chief Counsel
**JACOB PHILLIPS**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2139

> Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Pedro L. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

Plaintiff filed applications for DIB and SSI on September 15, 2015, alleging a disability onset date of December 31, 2011. Tr. 271, 278, 352.[1] The application was denied initially and on reconsideration. An Administrative Law

---

[1] Citations to the official transcript of record filed by the Commissioner on March 9, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

Judge (ALJ) held a hearing on June 11, 2018.  Tr. 41-86.
Plaintiff was represented by an attorney at the hearing.
Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on July 12, 2018, in which she
found Plaintiff is not disabled, and, therefore, Plaintiff is
not entitled to benefits.  On June 25, 2019, that decision became
the final decision of the Commissioner when the Appeals Council
denied Plaintiff's request for review.  Tr. 1-7.  *See Sims v.
Apfel*, 530 U.S. 103, 106-07 (2000).

<u>**BACKGROUND**</u>

Plaintiff was born on March 20, 1979, and was 39 years old
at the time of the hearing.  Tr. 271.  Plaintiff has a tenth-
grade education.  Tr. 48.

Plaintiff alleges disability due to Agoraphobia, Anxiety,
Post-traumatic Stress Disorder (PTSD), Bipolar II, Severe
Depression, "potential ADHD diagnosis," insomnia, carpel tunnel
syndrome (CTS), back pain, inability to "follow easy tasks,"
"general decline in mental disorder," obsessive compulsive
disorder (OCD), hemorrhoids, and "pinched off nerves."  Tr. 89.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 28-30.

3 - OPINION AND ORDER

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially
dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

*See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require

complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after his alleged onset date.

7 - OPINION AND ORDER

Tr. 24.

At Step Two the ALJ found Plaintiff has the severe impairments of "status post left wrist fracture," "right ring finger mallet fracture," attention-deficit hyperactivity disorder (ADHD), bipolar II disorder, "agoraphobia with panic," "mild neurocognitive disorder," and generalized anxiety disorder. Tr. 24. The ALJ found Plaintiff's impairments of obesity, "alcohol/cannabis/stimulant use disorders in reported remission," and "post hepatic pain" are not severe. Tr. 25. The ALJ found Plaintiff's CTS and "repetitive strains of the cervicothoracic spine, bilateral shoulders, lumbosacral spine, and bilateral hips" are not medically determinable impairments. Tr. 25

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 25. The ALJ found Plaintiff has the RFC to perform medium work except:

> [Plaintiff] cannot climb ladders, ropes and scaffolds and only frequently handle and finger bilaterally. [Plaintiff] is limited to understanding and remembering simple instructions in a workplace environment with few changes, no contact with the general public, and no more than occasional contact with coworkers.

Tr. 26.

At Step Four the ALJ concluded Plaintiff can perform his past relevant work as a laborer. Tr. 31.

In the alternative the ALJ found at Step Five that Plaintiff can perform jobs that exist in significant numbers in the national economy.  Tr. 32.  Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) partially rejected the lay-witness statements of Plaintiff's partner, Melissa H., and stepdaughter, Sharie H.; and (3) partially rejected the opinions of Edmond Whiteley, M.D., treating psychiatrist; Scott Alvord, Psy.D., examining psychologist; and James Devaney, treating mental health nurse practitioner.

## I.    The ALJ did not err when she partially rejected Plaintiff's testimony

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.  The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment

9 - OPINION AND ORDER

could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

At the hearing Plaintiff testified he stopped working due to severe panic attacks and severe depression. Tr. 52. Plaintiff also has agoraphobia and he "was just really anxious all the time and [he] just couldn't function." *Id*. Plaintiff stated he was laid off because his employer was "seeing the effects of [his] conditions." Tr. 52-53. Plaintiff testified he does not believe

he can work because he is "always in fear of [his] anxiety acting up, and being a liability to a company" and he believes the "stress would just overwhelm" him.  Tr. 60.  Plaintiff stated although he has a new baby, his 14-year old stepdaughter "does mostly everything with" the baby.  *Id*. Plaintiff's step-daughter also "cooks, cleans[,] . . . does everything."  *Id*.  Plaintiff testified due to his agoraphobia he cannot go to the mall or to the movies, he does not go outside, he shops at night, and he does not have friends because he does not interact with people.  Tr. 60, 68, 71.  Plaintiff does not go to the store by himself, his step-daughter always comes with him.  Plaintiff testified he has not driven since 2014 because of his anxiety.  Plaintiff's bipolar disorder causes him to have "maybe five outbursts" per day that cause him to need "20 minutes to an hour for" himself.  Tr. 73.  Plaintiff noted "the depressive part of [his] bipolar disorder" would make him miss "more than half the week" of work.  Tr. 74.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 27.  The ALJ noted the record reflects Plaintiff engaged in activities outside of his home several times

in contradiction to his testimony.  For example, in 2013
Plaintiff attended classes at Lane Community College in pursuit
of a GED.  Tr. 561.  In August 2016 Plaintiff reported having
"episodes of agoraphobia when he goes shopping and when he
attends school functions but he 'deals with it.'"  Tr. 609.  In
April 2018 examining psychologist Paula Belcher, Ph.D., noted
Plaintiff's "anxiety does not appear to prevent him from
attending some of his children's school functions."  Tr. 769.
The ALJ noted although Plaintiff testified he does not drive and
has not driven since 2014, Plaintiff reported in April 2018 that
he avoids driving in the afternoon "because traffic makes him
anxious, but otherwise [he] has no difficulty driving."  Tr. 769.
The ALJ pointed out that Plaintiff testified his step-daughter
"cooks, cleans[,] . . . does everything'" and takes care of
Plaintiff's baby.  In April 2018, however, Plaintiff reported
preparing dinner every day, caring for his children, helping with
household chores, and doing laundry.  Tr. 768.  In addition,
Plaintiff testified he was laid off from work due to performance
issues, however, Plaintiff's employer indicated Plaintiff did not
have any problems with attendance, productivity, absences, or
completing duties without extra help or supervision.  Tr. 316-17.
The ALJ noted Plaintiff reported in November 2013 that he had
been hired as a chef, but he "left work after several weeks due
to the extended work hours . . . that . . . caus[ed] him a great

deal of stress since he was scheduled to care for his children."
Tr. 572.

The Court concludes on this record that the ALJ did not err
when she partially rejected Plaintiff's testimony regarding the
intensity, persistence, and limiting effects of his symptoms
during the relevant period because the ALJ provided clear and
convincing reasons supported by substantial evidence in the
record for doing so.

## II.  The ALJ did not err when she partially rejected lay-witness statements

Plaintiff asserts the ALJ erred when she partially rejected
the lay-witness statements of Plaintiff's partner, Melissa H. and
step-daughter, Sharie H.

Lay-witness testimony regarding a claimant's symptoms is
competent evidence that the ALJ must consider unless he
"expressly determines to disregard such testimony and gives
reasons germane to each witness for doing so." *Lewis v. Apfel*,
236 F.3d 503, 511 (9th Cir. 2001).  *See also Merrill ex rel.
Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ,
in determining a claimant's disability, must give full
consideration to the testimony of friends and family members.").
The ALJ's reasons for rejecting lay-witness testimony must also
be "specific."  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.
2006).  When "the ALJ's error lies in a failure to properly
discuss competent lay testimony favorable to the claimant, a

13 - OPINION AND ORDER

reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout,* 454 F.3d at 1056.

On December 1, 2015, Melissa H. completed a Third Party Adult Function Report in which she noted Plaintiff does not like to be "out in public" and "can't be alone when . . . shopping." Tr. 344.  Melissa H. noted Plaintiff has severe nightmares, does not go outside except for medical appointments and "to watch his children get on & off bus," does not drive, cannot "get his words out right to people because of his anxiety," cannot pay attention for more than two-to-three minutes, does not follow written instructions well, and does not handle stress well.  Tr. 346-49.

On January 16, 2018, Sharie H. submitted a letter in which she stated Plaintiff has "extremely bad anxiety," and, as a result, Sharie H. must go with Plaintiff to stores and grocery shopping.  Tr. 395.  Sharie H. stated she helps to take care of her baby sister, to make dinner, and to clean up the house when she gets home from school.  *Id.*

The ALJ partially rejected the statements of Melissa and Sharie H.  Melissa and Sharie H.'s statements are substantially similar to Plaintiff's testimony.  The Court has already concluded the ALJ did not err when she partially rejected Plaintiff's testimony because the ALJ provided support for her

opinion based on substantial evidence in the record.  The Court also concludes on the same basis that the ALJ did not err when she partially rejected the statements of Melissa and Sharie H.

## III. The ALJ did not err when she partially rejected the opinions of Drs. Whiteley and Alvord

Plaintiff asserts the ALJ erred when she partially rejected the opinions of Dr. Whiteley, treating psychiatrist and Dr. Alvord, examining psychologist.

An ALJ may reject a treating or examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the

15 - OPINION AND ORDER

nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

### A.   Dr. Whiteley

On May 22, 2018, Dr. Whiteley provided a statement regarding his evaluation of Plaintiff's condition. Dr. Whiteley noted he had seen Plaintiff twice before his May 22, 2018, appointment, but he had "collateral information about Plaintiff from his partner of 12 years who has been my patient for 5 years." Tr. 820. Dr. Whiteley stated it is his opinion that Plaintiff is "genuinely disabled from [a] mix of psychiatric disorders and . . . his prior denial of benefits likely resulted from the fact that [Plaintiff] has an atypical presentation of Bipolar 2 Disorder characterized by extreme rapid cycling." *Id*. Dr. Whiteley also noted Plaintiff has "severe difficulty with sustained attention." Tr. 821. Finally, Dr. Whiteley stated Plaintiff "may also have PTSD but I have no direct history regarding this." Tr. 820. On June 4, 2018, Dr. Whiteley completed a Medical Source Statement in which he indicated Plaintiff had marked limitations in his ability to make judgments on simple work-related decisions, to carry out complex instructions, to make judgments on complex work-related

16 - OPINION AND ORDER

decisions, and to "respond appropriately to usual work situation [*sic*] and to changes in routine work setting."  Tr. 816-17. Dr. Whiteley opined Plaintiff would miss more than four days per month of work due to psychiatric problems.  Tr. 819.

The ALJ gave "little weight" to Dr. Whiteley's opinion noting Dr. Whiteley had seen Plaintiff only twice before he offered his opinion.  The ALJ also noted Dr. Whiteley's opinion was contradicted by the opinions of Dr. Belcher, examining psychologist, and nonexamining psychologist Ben Kessler, Psy.D. Dr. Belcher conducted a psychological assessment of Plaintiff on April 10, 2018.  Dr. Belcher reviewed Plaintiff's medical records and a previous psychological evaluation performed by Dr. Alvord and conducted a mental status examination and diagnostic interview.  Tr. 764-64.  Plaintiff reported feeling that a "part of [him] is depressed every day" for "maybe 2 minutes per day." Tr. 767.  Plaintiff denied having problems with his appetite or sleep, but stated he "gets in a 'sad mood' sometimes for an hour or so."  *Id*. Plaintiff reported "his 'bipolarness' happens every day" in the form of "rapid shift[s] from anger to calm."  *Id.* Plaintiff described having anxiety as "shaking my head and going crazy" and stated it is caused by "feeling like a failure to his children."  *Id*.  Plaintiff told Dr. Belcher that he "doe[sn't] do counseling" because "it's not confidential," but "then went on to complain about his psychiatrist and confidentiality."  Tr. 768.

17 - OPINION AND ORDER

Plaintiff reported taking care of his children, preparing dinner daily, helping with household chores, doing laundry, going to the store alone "if he makes quick trips," and driving.  Tr. 768-69. Dr. Belcher stated Plaintiff

> reports being depressed but contradicted himself several times in terms of the duration and frequency of his depressed moods.  He reports being diagnosed with bipolar disorder, but he denied symptoms of a manic or hypomanic episode. Rather, it appears, as exhibited during the evaluation, that he angers quickly and then calms quickly.  His mood seems to be erratic, which may be an aspect of anxiety.

Tr. 769.  Dr. Belcher noted Plaintiff reported "being anxious and having panic attacks, but he could not describe a panic attack . . . .  While he reports some mild compulsive behavior, [his symptoms] are not sufficient to warrant a diagnosis of that disorder."  *Id*.  Dr. Belcher explained Plaintiff "denies symptoms of PTSD [and his] behavior [is not] sufficient to warrant a diagnosis of that disorder."  Tr. 769.  Dr. Belcher noted Plaintiff has "mild symptoms of ADD" and his "anxiety does not appear to prevent him from attending some of his children's school functions."  *Id.*  Dr. Belcher completed a Medical Source Statement in which she found Plaintiff is not markedly limited in his ability to do any work-related activities.  Dr. Belcher found Plaintiff is moderately limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting and mildly or not limited in all other areas

18 - OPINION AND ORDER

including his ability to understand, to remember, and to carry out simple instructions and to interact appropriately with the public, supervisors, and coworkers.  Tr. 771-72.

In May 2016 Dr. Kessler, reviewing psychologist, found Plaintiff is markedly limited in his ability to interact appropriately with the general public and moderately limited in his ability to carry out detailed instructions, to accept instructions, to respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Tr. 158-59. Dr. Kessler found Plaintiff is not significantly limited in all other areas including his ability to carry out very short and simple instructions, to maintain concentration and attention for extended periods, to sustain an ordinary routine without special supervision, and to make simple work-related decisions.  *Id*. Dr. Kessler noted Plaintiff is able to "carry out and maintain [concentration, persistence, and pace] for simple tasks[, but] would be unable to maintain [concentration, persistence, and pace] for more complex tasks due to sxs of depression/anxiety." Tr. 159.

The Court concludes on this record that the ALJ did not err when she partially rejected Dr. Whiteley's opinion because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**B.    Dr. Alvord**

Dr. Alvord conducted a psychological evaluation of Plaintiff in June and September 2017.  Dr. Alvord noted Plaintiff's mood "was described as depressed."  Tr. 704. Plaintiff's thought "processes were intact with no evidence of tangentiality, circumstantiality or flight of ideas"; his speech was within normal limits; he was oriented "in all spheres"; his long-term and short-term memory were intact for dates and details; and his attention, concentration, and insight into his condition were adequate.  Tr. 704-05.  Dr. Alvord found Plaintiff "meets the criteria for PTSD as well as Bipolar II."  Tr. 705. Dr. Alvord noted Plaintiff's "symptoms have been present on some level since childhood/adolescence," but they "have been magnified recently following an incident in which he was assaulted and pistol whipped."  *Id*.  Plaintiff sustained a concussion during the assault and Dr. Alvord "suspect[ed] post-concussive symptoms and scores . . . highlight some memory discrepancies that are likely directly related to [Plaintiff's] head injury."  *Id.* Dr. Alvord suggested "[g]iven the recent duration since [Plaintiff] . . . sustain[ed] a head injury, some improvement is conceivable."  *Id*.  In November 2017 Dr. Alvord completed a Medical Source Statement in which he opined Plaintiff is mildly limited in his ability to understand, to remember, and to carry out simple instructions; moderately limited in his ability to

interact appropriately with the public; and markedly limited in all other areas.  Tr. 708-09.  Dr. Alvord noted Plaintiff would miss more than four days per month of work due to his "psychiatric problems."  Tr. 728.

The ALJ gave "little weight" to Dr. Alvord's assessments.  Particularly, the ALJ found Dr. Alvord's opinion that Plaintiff would miss more than four days of work per month and that he was markedly limited in his ability to make judgments on simple work-related decisions, to interact appropriately with coworkers and supervisors, and to respond to changes in routine work settings was not supported by the record.  The ALJ noted Dr. Alvord stated Plaintiff's symptoms have been present since childhood or adolescence, but the record reflects Plaintiff was able to sustain work activity successfully for years.  In addition, the ALJ noted Dr. Alvord's opinion was contradicted by the opinions of Drs. Belcher and Kessler.

The Court concludes on this record that the ALJ did not err when she partially rejected Dr. Alvord's opinion because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## IV. The ALJ did not err when she partially rejected the opinion of N.P. Devaney

Plaintiff asserts the ALJ erred when she partially rejected the opinion of N.P. Devaney, treating mental health nurse practitioner.

21 - OPINION AND ORDER

Medical sources are divided into two categories: "acceptable' and "not acceptable."  20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 416.902.  Medical sources classified as "not acceptable" include . . . nurse practitioners.  SSR 06-03p, at *2.  Factors the ALJ should consider when determining the weight to give an opinion from those "important" sources include the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise.  SSR 06-03p, at *4.  On the basis of the particular facts and the above factors, the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source.  SSR 06-03p, at *5-6.  The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.

On February 10, 2017, N.P. Devaney completed a Mental Residual Functional Capacity Report (MRFC) in which he stated Plaintiff was "unable to experience stress presented by any employment environment other than a sheltered workshop." Tr. 826.  N.P. Devaney stated Plaintiff is moderately limited in

22 - OPINION AND ORDER

his ability to ask simple questions, to request assistance, to maintain socially appropriate behavior, to adhere to basic standards of neatness and cleanliness, and to be aware of normal hazards and to take appropriate precautions.  Tr. 830-31. N.P. Devaney found Plaintiff is markedly limited in all other areas including his ability to understand, to remember, and to carry out very short and simple instructions; to make simple work-related decisions; and to sustain an ordinary routine without special supervision.  Tr. 829-830.

The ALJ gave N.P. Devaney's opinion "limited weight" on the grounds that it was not supported by Plaintiff's activities and was contradicted by the opinions of Drs. Belcher and Kessler. Specifically, as noted, Dr. Belcher found Plaintiff is not markedly limited in his ability to do any work-related activities.  Dr. Belcher found Plaintiff is moderately limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting and mildly or not limited in all other areas including his ability to understand, to remember, and to carry out complex instructions and to interact appropriately with the public, supervisors, and coworkers. Tr. 771-72.  Similarly, Dr. Kessler found Plaintiff is markedly limited in his ability to interact appropriately with the general public, moderately limited in his ability to carry out detailed instructions, to accept instructions, to respond appropriately to

criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 158-59.  Dr. Kessler found Plaintiff is not significantly limited in all other areas including his ability to carry out very short and simple instructions, to maintain concentration and attention for extended periods, to sustain an ordinary routine without special supervision, and to make simple work-related decisions.  *Id.*

The Court concludes on this record that the ALJ did not err when she partially rejected N.P. Devaney's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 29th day of November, 2021.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge

24 - OPINION AND ORDER